## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|   |   |
|---|---|
| MONIQUE BROOKS,<br>**as Independent Administrator of the**<br>**Estate of Roxanne Bradford,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:18-CV-563-NJR** |
| **HSHS MEDICAL GROUP, INC.,**<br>**LINDSAY R. O'NEIL,**<br>**UNITED STATES OF AMERICA,**<br>**JANE DOE, RN, and ST. ELIZABETH'S**<br>**HOSPITAL OF THE HOSPITAL**<br>**SISTERS OF THE THIRD ORDER OF**<br>**ST. FRANCIS,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

On February 12, 2015, Roxanne Bradford went to the Emergency Room at St. Elizabeth's Hospital for abdominal pain. Doctors initially suspected a perforated bowel, then thickened stool instead. Four days later, Bradford became unresponsive after suffering a cardiac arrest. Although she was resuscitated, Bradford did not regain consciousness and subsequently required the use of a ventilator. After spending several months at a nursing home facility, Bradford died on January 14, 2016.

On January 10, 2018, Bradford's sister, Monique Brooks, filed a wrongful death lawsuit in the Circuit Court of St. Clair County, Illinois (Doc. 1-1). The United States of America subsequently removed the case to federal court under the Federal Tort Claims Act. The case is now proceeding on the Fourth Amended Complaint (Doc. 89), which

asserts claims under the Illinois Wrongful Death Act and the Illinois Survival Statute against Defendants St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis ("St. Elizabeth's Hospital"), Lindsay O'Neil, RN, and HSHS Medical Group (collectively, "the St. Elizabeth's Defendants"), as well as the United States and Jane Doe.

The United States has moved for summary judgment on the basis of sovereign immunity (Doc. 154). St. Elizabeth's Hospital, Lindsay O'Neil, and HSHS Medical Group ("St. Elizabeth's Defendants") have moved for partial summary judgment (Doc. 156). For the reasons set forth below, the St. Elizabeth's Defendants' motion is granted in part and denied in part. The motion filed by the United States is denied.

## FACTUAL BACKGROUND

The following facts are undisputed for the purposes of summary judgment. On February 12, 2015, Roxanne Bradford, who was 58 years old, was admitted to St. Elizabeth's Hospital for abdominal pain (Doc. 154-1 at p. 2). During her initial evaluation, Bradford was given a CT scan, which the radiologist interpreted as suggestive of a perforated bowel (*Id.* at p. 17). A surgeon, Dr. Donald Crouch, then reviewed the CT scan and concluded that Bradford had severe inspissated, or thickened, stool as opposed to a perforation and planned for her to receive gentle laxatives with close monitoring for progression warranting operative intervention (*Id.* at p. 9). The inpatient family medicine physicians assigned to Bradford further supplemented this treatment with IV fluids and antibiotics, as well as medications for pain and nausea (*Id.* at p. 5, 19). These doctors included Dr. Anne Nash, an employee of SIHF Healthcare, and Dr. Vincent Tichenor, a member of the United States Air Force in the second year of a family practice residency

program at Saint Louis University (*Id.*).

Plaintiff Monique Brooks, Bradford's sister, visited Bradford at the hospital three days later, on February 15, 2015 (Doc. 154-2 at p. 14). At that point, Bradford was able to have a conversation with Brooks, though her breathing was labored (*Id.* at p. 15). The next day, however, a "code" was called because Bradford became unresponsive while being transferred to a chair by nursing staff (Doc. 169-6 at p. 8). After being resuscitated, Bradford was placed on a ventilator and admitted to the intensive care unit, remaining unresponsive to anything but painful stimuli (*Id.* at pp. 1, 8). Staff at St. Elizabeth's called Bradford's mother and said there was an emergency but gave no details (*Id.* at pp. 16-17). Brooks testified that, when she arrived at the hospital, she was not expecting to find her sister unresponsive and connected to a ventilator and multiple tubes (*Id.* at p. 19). When Brooks and her mother tried to get answers, no one was able to explain what happened (*Id.* at p. 20). Eventually they were told that Bradford's heart gave out and she went into cardiac arrest (*Id.* at p. 21). A neurologist further told them that Bradford had diffuse anoxia to her brain and that she was not going to recover (*Id.* at p. 22).

On February 26, 2015, Bradford was transferred from the ICU at St. Elizabeth's Hospital to Saint Louis University Hospital; she then spent several months at a nursing home facility (Doc. 154-10 at pp. 11-14). On September 24, 2015, the probate court formally adjudicated Bradford disabled and appointed Brooks the "Guardian of the person of the disabled adult person, Roxanne Bradford." (Doc. 169-10). Brooks testified that she observed Bradford grimacing when being turned or cleaned, and would sometimes see a tear coming out of her eye (Doc. 169-12 at p. 2). Bradford could make eye

contact, blink, and occasionally give a crooked smile, but she could not squeeze her hand, nod her head, or respond to questions (*Id.*).

On December 25, 2015, Bradford was admitted to Memorial Hospital in Belleville, Illinois, where she was noted to be ill-appearing, lethargic, non-communicative, and non-responsive except to verbal, tactile, or painful stimulus (Doc. 169-9). Bradford died on January 14, 2016 (Doc. 169-11).

Brooks, who has a bachelor's degree in nursing and a master's degree in public health, testified that she first contacted an attorney in the fall of 2015 because she wanted to know what happened to her sister; one day she was talking and interacting with her sister at St. Elizabeth's, and the next she was on a ventilator (Doc. 154-2 at pp. 4-5; Doc. 169-13 at pp. 2, 4). Brooks explained that "[m]y family wanted to know what happened to my sister, and that was never told to us what exactly happened, why it had happened." (*Id.* at p. 4). Brooks denied wanting to find out who "was responsible" for her sister's heart giving out (Doc. 154-3 at p. 12).

## PROCEDURAL HISTORY

On January 10, 2018, Brooks filed her initial complaint in this matter as Independent Administrator of the Estate of Roxanne Bradford in the Circuit Court of St. Clair County, Illinois (Doc. 1-1). The complaint stated, "this is a medical negligence wrongful death action pursuant to 740 ILCS 180/1 and 180/2 to recover damages for the wrongful death suffered by Roxanne Bradford . . . ." (Doc. 1-1 at ¶ 1). It did not specifically reference the Illinois Survival Act. St. Elizabeth's Hospital, HSHS Medical Group, Inc., Saint Louis University, SIHF Healthcare, Anne Nash, M.D., Vincent Tichenor, M.D.,

Lindsay R. O'Neil, RN, and Jane Doe, RN, were named as defendants.

The United States removed the case to this district court pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2679, on March 12, 2018 (Doc. 1). In its Notice of Removal, the United States certified that Defendant Dr. Tichenor was an employee of the United States Air Force at the time of the events referenced in the complaint (Doc. 1-2). On May 10, 2018, the United States certified that Dr. Nash and SIHF were acting within the scope of their employment as deemed employees of the United States at all relevant times (Doc. 13). As such, they were eligible for Federal Tort Claims Act coverage pursuant to the Federally Supported Health Centers Assistance Act (FSHCAA) (*Id.*). Accordingly, the Court permitted the United States to substitute itself as a defendant for Dr. Tichenor, Dr. Nash, and SIHF (Docs. 12, 18).

On March 16, 2018, Brooks filed an SF-95 form with the U.S. Department of Health and Human Services (HHS) believing—based upon the information available to her at the time—that it was the appropriate agency to put on notice regarding the claims against Dr. Tichenor, Dr. Nash, and SIHF Healthcare (Doc. 170-8).

On May 25, 2018, the United States moved for summary judgment pursuant to 28 U.S.C. § 2675(a) arguing Brooks failed to exhaust administrative remedies prior to filing suit (Doc. 17). With regard to Dr. Nash and SIHF, the United States noted that Brooks did not file an administrative claim with HHS until March 16, 2018, and that the claim had yet to be decided. The United States also asserted that Brooks had yet to file an administrative claim with the Air Force as to Dr. Tichenor. In response to that motion for summary judgment, Brooks informed the Court that her administrative remedies would

be exhausted on or before September 16, 2018 (Doc. 19), and at that point, the motion would become moot (*Id.*). Rather than dismiss Brooks's claims, the Court stayed its ruling on the motion for summary judgment filed by the United States to provide Brooks with the required time to exhaust her administrative claims with the appropriate federal agencies (Doc. 24). On September 17, 2018, Brooks informed the Court the time for resolution of her administrative claim had expired insofar as HHS has failed to make final disposition of the claim within six months after the claim was presented. Accordingly, her administrative remedies were exhausted.[1]

Brooks subsequently moved to amend her complaint several times. It was not until February 13, 2019, that Brooks moved for leave to amend her complaint a third time to include claims under the Illinois Survival Act (Doc. 62). She filed the Third Amended Complaint on May 23, 2019 (Doc. 74). On July 15, 2019, Brooks filed the Fourth Amended Complaint alleging, for the first time, that Dr. Donald Crouch was an actual and/or apparent agent of St. Elizabeth's Hospital and HSHS Medical Group and that Dr. Crouch negligently rendered medical treatment to Bradford (Doc. 89).

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[1] On June 27, 2018, Brooks's counsel requested that HHS transfer a copy of the original Form 95 to the Department of the Air Force as to Dr. Tichenor pursuant to 28 C.F.R. § 14.2(b)(1) ("When a claim is presented to [the incorrect agency], that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer.") (*see* Doc. 27). On July 10, 2018, HHS stated it was unaware of Vincent G. Tichenor's employment status and requested that Brooks's counsel transfer a copy of the claim to the appropriate agency. On August 7, 2018, counsel sent the original Form 95 to the United States Air Force. These dates, ultimately, are inconsequential for the purposes of the Court's analysis.

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

DISCUSSION

I.     ST. ELIZABETH'S DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

A.     **Statute of Limitations**

1.     The Illinois Survival Act

The St. Elizabeth's Defendants first argue that Brooks's claims brought pursuant to the Illinois Survival Act are barred by a two-year statute of limitations. Bradford died on January 14, 2016, and the initial complaint in this matter was filed on January 10, 2018. That first complaint, however, did not assert a claim under the Illinois Survival Act; neither did her first or second amended complaint. It was not until Brooks moved to amend her complaint a third time, on February 13, 2019, that she first introduced a claim under the Illinois Survival Act (*see* Doc. 62).

Illinois law imposes a two-year statute of limitations with respect to actions arising out of patient care. 735 ILL. COMP. STAT. § 5/13-212(a). The limitations period begins to run when the party knows or, through the use of reasonable diligence should have known, both that an injury or death occurred and that it was wrongfully caused. *Id.; Moon*, 67 N.E.3d at 230; *Heredia v. O'Brien*, 33 N.E.3d 807, 814 (Ill. App. Ct. 2015).

"The term 'wrongfully caused' does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action." *Id.* at 230. Rather, "the term refers to that point in time when the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Id.* at 230-31. "The question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them." *Id.*

Section 13–209(a) of the Illinois Administrative Code addresses survival actions and provides: "[i]f a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, and the cause of action survives: . . . an action may be commenced by his or her representative before the expiration of that time, or within one year from his or her death whichever date is the later." 735 ILL. COMP. STAT. § 5/13–209(a). The Illinois Supreme Court has held that the statute of limitations period in a Survival Act claim is triggered on the date that the decedent discovers the injury. *Moon v. Rhode*, 67 N.E.3d 220, 230 (Ill. 2016). This is because a survival action allows for recovery of damages for injury sustained by the deceased up to the time of death. *Id.* The representative steps into the shoes of the decedent and takes the rights of the decedent. *Id.* Thus, if the decedent would have been time-barred from pursuing a cause of action if he or she had survived, the representative is also time-barred. *Id.*

Section 13-211(c) then provides: "If the person entitled to bring an action, specified in Sections 13-201 through 13-210 of this Code, at the time the cause of action accrued, is

. . . under a legal disability, then he or she may bring the action within 2 years after . . . the disability is removed." 735 ILL. COMP. STAT. § 5/13-211(c). If the person "is not under a legal disability at the time the cause of action accrues, but becomes under a legal disability before the period of limitations otherwise runs, the period of limitations is stayed until the disability is removed." 735 ILL. COMP. STAT. § 5/13-211(d). The individual "need not be adjudicated disabled to have a legal disability." *Mickiewicz v. Generations at Regency, LLC*, 2020 WL 364145, *2 (Ill. App. Ct. Jan. 22, 2020) (quoting *Parks v. Kownacki*, 737 N.E.2d 287 (Ill. 2000)). Rather, "it is only necessary for the record to contain sufficient allegations of fact to prove legal disability." *Id.* (citing *In re Doe*, 703 N.E.2d 413 (Ill. App. Ct. 1998)). The individual's disability terminates upon his or her death. *Id.* at *3. Under the plain language of Section 13-209(a)(1), the decedent's representative would then have two years from the death to commence an action. *Id.*

Here, the record is clear that Bradford became disabled immediately after the "code" event on February 16, 2015, when she was placed on a ventilator and remained unresponsive to anything but painful stimuli. That disability was not removed until her death on January 14, 2016. Thus, under Illinois law, as Bradford's representative, Brooks had two years from the date of her death to bring a survival action. Brooks asserts she did just that when she filed a complaint on January 10, 2018.

Despite the nature of Bradford's injury, the St. Elizabeth's Defendants argue that Brooks's Survival Act claim actually accrued at the time of Bradford's injury on February 16, 2015, meaning the statute of limitations for such a claim expired on February 16, 2017. Given the fact that Bradford was on a ventilator and unresponsive to all but painful

stimuli, however, the Court finds there is, at the very least, a question of fact as to what Bradford did or did not know about her injury. *See Moon*, 67 N.E. 3d at 230 ("In many, if not most, cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact.").

Alternatively, and in spite of the purpose of the Survival Act—to allow the representative to step into the shoes of the decedent—the St. Elizabeth's Defendants argue that the date Brooks began contacting law firms to review Bradford's medical records should be used as the accrual date. Because Brooks began contacting law firms in the fall of 2015, they argue, the statute of limitations expired in the fall of 2017, well before the filing of the initial complaint on January 10, 2018. This argument is unsupported by Illinois law, however, which clearly provides that it is the date the *decedent* learns of the injury that triggers the limitations period. *See id.*

Nevertheless, even though Brooks filed her initial complaint before the statute of limitations for a survival action expired, as the St. Elizabeth's Defendants point out, the complaint did not explicitly mention that it was being filed pursuant to the Survival Act. Indeed, the first mention of the Survival Act came in the Third Amended Complaint, which was filed on May 23, 2019 (Doc. 74). Thus, Brooks's survival claims are still time-barred unless they relate back to the filing of the initial complaint.

"There is no meaningful distinction . . . between Illinois law on relation back and Federal Rule of Civil Procedure 15(c)(1)(B)." *Hahn v. Walsh*, 762 F.3d 617, 635 n.37 (7th Cir. 2014). "Under Illinois law as under federal law, an amendment relates back when it

arises out of the same transaction or occurrence set up in the original pleading." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011). Even "significant" changes to a complaint can relate back if the defendant "had fair notice of the substance of the new allegations from the outset." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 741 (7th Cir. 2018) (citing *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005)). Fair notice is provided when the original complaint gave the defendant all the information necessary to prepare a defense to the claim subsequently asserted in the amended complaint. *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 751 (7th Cir. 2005) (citing *Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 656 N.E.2d 1101, 1107 (Ill. 1995)). The Illinois Supreme Court has adopted the "sufficiently close relationship test," pursuant to which, if "there is a 'sufficiently close relationship' between the original and new claims, both in temporal proximity and the general character of sets of factual allegations and where the facts are all part of the events leading up to the originally alleged injury," relation back will apply. *Kleronomos v. Aim Transfer & Storage Inc.*, No. 19 C 01844, 2020 WL 5365976, at *3 (N.D. Ill. Sept. 8, 2020).

The St. Elizabeth's Defendants argue Brooks's Wrongful Death Act claims and Survival Act claims, by their very nature, focus on different injuries to different parties. While Brooks's Wrongful Death Act claims focus on Bradford's death, her Survival Act claims focus on the injuries experienced during the course of Bradford's lifetime. Thus, there is not a sufficiently close relationship between the original and new claims, either in time or subject matter. In response, Brooks argues that the original complaint sets out a Survival Act claim, without naming it as such, when it clearly alleges that Bradford

suffered injury as a result of the negligence of Defendants' and Defendants' agents, servants, and employees. And even if the original complaint is insufficient, the Third Amended Complaint relates back because it is based on the same core of facts as alleged in the original complaint.

The Court agrees with Brooks. The original complaint stated that Bradford entered St. Elizabeth's Hospital on February 12, 2015, and that Defendants and their respective agents, servants, and employees treated Bradford as their patient (Doc. 1-1 at ¶ 13). Then, on February 16, 2015, Bradford "developed a change in circumstances including symptoms of restlessness, confusion and respiratory difficulty, and thereafter became nonresponsive; that plaintiff suffered cardiac arrest and a code was called at 1608; that at 1610 an inoperable AED was applied; that at 1617 an operating AED was applied at which point Roxanne Bradford, decedent, was in atrial asystole; that at 1627 Roxanne Bradford, decedent, was in atrial systole." (*Id.* at ¶ 14). Furthermore, as a result of these events, Bradford suffered hypoxic ischemic brain injury involving both cerebral hemispheres and later died on January 14, 2016 (*Id.* at ¶ 15).

If that were not enough, the complaint goes on to allege, *inter alia*, that Defendants negligently failed to monitor, assess, and diagnose Bradford's change in circumstances, failed to timely resuscitate her, and failed to maintain and provide operable life-saving equipment, and that, as a result, Bradford suffered damage, including but not limited to cardiac arrest, hypoxic ischemic brain damage, conscious pain and suffering prior to death (*Id.* at ¶¶ 20-21). Bradford also was required to undergo necessary medical, therapeutic, hospital, surgical, and skilled nursing care and treatment and became

obligated to pay for such treatment (*Id.* at ¶ 22).

These factual allegations clearly gave Defendants fair notice of Brooks's Survival Act claims and all information necessary to prepare a defense to the claims subsequently asserted in the Third Amended Complaint. Any argument that a wrongful death claim and a survival claim are unrelated because they focus on different injuries to different parties is unavailing. The original complaint more than sufficiently laid out the facts that form the basis of Brooks's Survival Act claims. Therefore, the Third Amended Complaint relates back to the original complaint, which was timely filed. Defendants' motion for summary judgment is denied on these grounds.

### 2.     Claims Against Dr. Crouch

The St. Elizabeth's Defendants next argue that Brooks's claims against Dr. Donald Crouch are barred by the statute of limitations and the statute of repose. The first time Brooks asserted any negligence by Dr. Crouch—and that Dr. Crouch was an agent of St. Elizabeth's and HSHS Medical Group—was when she filed her Fourth Amended Complaint on July 15, 2019. The treatment rendered by Dr. Crouch, however, took place on February 12 and 13, 2015. Thus, they argue, the four-year Illinois statute of repose expired, at the very latest, in February 2019—five months before Brooks first added her allegations involving Dr. Crouch on July 15, 2019 (Doc. 89).

The St. Elizabeth's Defendants further contend the claims involving Dr. Crouch in the Fourth Amended Complaint cannot relate back to the original complaint because they were not part of the same conduct, transaction, and occurrence set forth in the initial complaint. While the original complaint focused solely on the code event of February 16,

2015, the Fourth Amended Complaint asserted an entirely new theory of liability: that Dr. Crouch was negligent with regard to his general surgery consult to Bradford on February 12 and 13, 2015. Because Brooks's initial claims did not provide Defendants with sufficient notice of her subsequent claim involving Dr. Crouch, the claims in the Fourth Amended Complaint cannot relate back.

Brooks, in response, argues the original complaint should not be read so mechanically. Referencing Rule 8 of the Federal Rules of Civil Procedure, Brooks asserts the original complaint put Defendants on notice of her claim against Dr. Crouch. And even if the original complaint is deficient, the Fourth Amended Complaint relates back to the initial complaint.

In the initial complaint, Brooks alleged that on or about February 12, 2015, Bradford was admitted to the hospital and that defendants, through their agents, servants, and employees, undertook to treat Bradford as their patient through February 26, 2015 (Doc. 169-1 at ¶ 13). The remainder of the complaint, however, focuses on the events of February 16, 2015. Dr. Crouch is never mentioned by name, and Bradford's treatment prior to February 16, 2015, is not discussed. Even liberally construing the initial complaint, it insufficiently describes any allegations involving Dr. Crouch. Thus, for Brooks's claims in the Fourth Amended Complaint to be timely, they must relate back to the initial complaint.

As previously discussed, Illinois adheres to the "sufficiently close relationship" test, whereby "new factual additions will be considered to relate back where there is a 'sufficiently close relationship' between the original and new claims, both in temporal

proximity and in the general character of the sets of factual allegations and where the facts are all part of the events leading up to the originally alleged injury." *Porter v. Decatur Mem'l Hosp.*, 882 N.E.2d 583, 592 (Ill. 2008). But where the original and amended facts are separated by a significant lapse of time, or if the two sets of facts are different in character or led to different injuries, then the amendment is considered distinct and will not relate back. *Simpkins v. HSHS Med. Grp., Inc.*, 93 N.E.3d 542, 550 (Ill. App. Ct. 2017). "The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) (quoting *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006)). To determine whether the defendant had such notice, courts should consider the full record, including depositions and exhibits. *Simpkins*, 93 N.E.3d at 550.

Here, the record does not support the relation back of Brooks's claims with regard to Dr. Crouch. Although the original complaint does state that Bradford was admitted on February 12, 2015, and that Defendants and their employees and agents cared for her, the remainder of the complaint concerns Defendants' response to Bradford's cardiac arrest and code event on February 16, 2015. The Court agrees with the St. Elizabeth's Defendants that Brooks's claim concerning a surgical consult performed by Dr. Crouch three days prior to Bradford's cardiac arrest and code is not part of the same conduct, transaction, and occurrence as that set forth in her initial complaint. Because Brooks's claims regarding Dr. Crouch's conduct, which occurred on February 12 and 13, 2015, was

not filed until July 15, 2019, and it does not relate back to the original complaint, they are barred by the statute of limitations and statute of repose. *See* 735 ILL. COMP. STAT. § 5/13-212(a). Those claims will be dismissed.[2]

## B.    Actual and Apparent Agency

Defendants next argue summary judgment should be granted in favor of St. Elizabeth's Hospital and HSHS Medical Group because Brooks is unable to establish a claim of actual or apparent agency regarding treatment rendered by Dr. Tichenor and Dr. Nash. Brooks does not dispute the lack of actual agency, so the Court's analysis focuses solely on the doctors' apparent agency.

"In Illinois, a hospital may be liable vicariously for the medical or professional negligence of a non-employee treating physician if there is an apparent agency relationship between the hospital and the treating physician." *Rusinowski v. Vill. of Hillside*, 19 F. Supp. 3d 798, 811 (N.D. Ill. 2014) (citing *Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 794 (Ill. 1993)). Under this doctrine, unless a patient knew or should have known that the physician providing treatment was an independent contractor, the hospital may be held liable for the negligent acts of that physician. *Williams v. Tissier*, 2019 WL 6905935, 2019 IL App (5th) 180046, ¶ 30, *appeal denied*, 144 N.E.3d 1209 (Ill. 2020).

In *Gilbert*, the Illinois Supreme Court established three elements necessary to establish a hospital's vicarious liability under the doctrine of apparent agency: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude

---

[2] Because the claims involving Dr. Crouch are dismissed, the Court need not address Defendants' argument that summary judgment should be entered in their favor with respect to Brooks's claims concerning any alleged acts and/or omissions on the part of Dr. Crouch for lack of expert testimony.

that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence. *Gilbert*, 622 N.E.2d at 795.

The first two elements require proof that the hospital "held itself out" in a manner that would lead a reasonable person to believe the doctors were employees. *Knighten v. United States*, No. 06 C 1318, 2008 WL 5244475, at *3 (N.D. Ill. Dec. 16, 2008) (citing *Gilbert*, 622 N.E.2d at 796). The hospital need not make an explicit representation that the doctors worked there. *Id.* Rather, the element is satisfied if the hospital holds itself out as a medical care provider and fails to inform the plaintiff that independent contractors provide the medical services. *Id.*

The "justifiable reliance" element may be satisfied if the plaintiff relied upon the hospital itself to provide care, rather than a specific physician. *Williams*, 2019 WL 6905935, 2019 IL App (5th) 180046 at ¶ 29. "Courts have recognized a significant distinction between cases where the plaintiff is seeking care from the hospital itself and cases where the plaintiff is merely looking to the hospital as a place where the plaintiff's personal physician provides care and treatment." *Id.* (citing *Gilbert*, 622 N.E.2d at 796).

1. The St. Elizabeth's Defendants' Consent Form and the "Holding Out" Elements

Illinois courts have held that executed consent forms disclosing that physicians are not employees of the hospital are "almost conclusive" in determining whether a hospital

should be held liable for the medical negligence of an independent contractor. *Steele v. Provena Hosps.*, 996 N.E.2d 711, 734 (Ill. App. Ct. 2013). "The existence of a signed consent form containing a clear, concise, and unambiguous 'independent contractor' disclaimer is an important fact to consider in evaluating the 'holding out' element, but it is not dispositive." *Williams*, 2019 WL 6905935, 2019 IL App (5th) 180046 at ¶ 33.

Here, the St. Elizabeth's Defendants primarily rely on the consent form signed by Roxanne Bradford when she was admitted to the hospital to demonstrate Bradford was on notice that the medical professionals she would encounter were independent contractors and not employees of the hospital.

Indeed, the two-page consent form signed by Bradford contained a bolded provision on the first page stating: "**physicians on the staff of this hospital, including the attending physician(s), are not employees or agents of the hospital, but rather, are independent contractors** . . . ." A space for Bradford's initials immediately after this provision is blank (Doc. 157-9). The second page of the consent form contains two additional provisions requiring the patient's initials, one for "Personal Valuables" and one for payment authorization (*Id.*). Bradford initialed these provisions and signed and dated the signature line, which stated: "I have read the terms and conditions cited on both pages 1 and 2 of the consent form. This form has been explained to me and I understand its contents and significance." (*Id.*). Defendants also note that Bradford signed the identical consent form just two months prior. On that consent form, Bradford initialed the independent contractor provision (Doc. 157-11).

In response, Brooks argues there is a genuine issue of material fact as to whether

Bradford even read or acknowledged the specific independent contractor disclosure language in the consent form, given that her initials are missing from that provision. And even if she had read the provision, it is ambiguous.

In *Williams*, an Illinois appellate court found the exact same language in another St. Elizabeth's Hospital consent form to be insufficient to put the plaintiff on notice that her physician was an independent contractor. In that instance, the wording above was not bolded and was in a small font size.[3] *Id.* at ¶ 10. The *Williams* court also found that the language itself—the exact same language present in the consent form signed by Bradford—was not clear and concise, stating:

> In the first paragraph of the St. Elizabeth's form, the patient authorizes "my physician" and "any other physicians who may attend me" to provide treatment. The second paragraph contains the independent contractor disclosure, stating that "attending physicians" are independent contractors and are not employees and that "physicians on staff" are not employees of the hospital. There is no reference to "my physician" in the second paragraph. The second paragraph does not state that "my physician" is an "attending physician" or a "physician on staff." The document does not expressly state that the patient's personal physician was an independent contractor. . . . [T]he St. Elizabeth's Consent for Treatment form did not notify the patient in clear, concise, and express language that the physicians who were going to treat the plaintiff at St. Elizabeth's were independent contractors.

*Id.* at ¶ 41. The court also noted that, like here, the independent contractor clause was just one of multiple provisions for the authorization for release of information, the liability waiver for personal valuables, and the guarantee of account. These ambiguities, along with other evidence including hospital signage, the location of the doctor's office (in the

---

[3] The Court is unable to determine what font size was used on the consent form signed by Bradford, but it appears to be larger than the 8-point font used in *Williams*.

hospital's medical park), screenshots of the hospital's website, and the plaintiff's own testimony that she researched the hospital's services, led the court to conclude that whether the St. Elizabeth's disclosure provided meaningful notice to plaintiff that her doctor was an independent contractor was a material issue of fact. *Id.* at ¶ 46.

In this case, the independent contractor disclosure contains the same language disapproved of by the Illinois Court of Appeals. While one line of the language in Bradford's form was bolded, she also did not initial the provision. On this basis alone, the Court finds there is a genuine issue of material fact as to whether Bradford was aware that the physicians who treated her were not employees of St. Elizabeth's Hospital or HSHS Medical Group. Additionally, Brooks has submitted evidence that the St. Elizabeth's website states it "is fortunate to have excellent physicians, representing over 40 medical specialties, serving our patients throughout Southern Illinois." (Doc. 169-25). Dr. Tichenor and Dr. Nash wore scrubs or casual work attire indistinguishable from St. Elizabeth's employees (Doc. 159-15; Doc. 159-16). And St. Elizabeth's supplied the doctors with a St. Elizabeth's identification badge with their name on it (Doc. 169-16).

Construing these facts in a light most favorable to Brooks, the Court finds that there is a genuine issue of material fact as to whether St. Elizabeth's held out Dr. Tichenor and Dr. Nash as its apparent agents.

2. <u>Justifiable Reliance</u>

As discussed above, the "justifiable reliance" element of apparent agency may be satisfied if the plaintiff relied upon the hospital itself to provide care, rather than a specific physician. *Williams*, 2019 WL 6905935, 2019 IL App (5th) 180046 at ¶ 29. This element

requires far less discussion, as it is undisputed that Bradford went to the Emergency Room due to stomach pains and was admitted to the hospital. She did not go to St. Elizabeth's to see any particular doctor, and the evidence in the record indicates that Bradford did not know Dr. Tichenor or Dr. Nash prior to her admission. Accordingly, the Court finds that the justifiable reliance element is met.

Because Brooks has met the third element of the apparent agency test and there is a genuine issue of material fact as to the first and second elements, the St. Elizabeth's Defendants are not entitled to summary judgment on the issue of apparent agency with regard to Dr. Tichenor and Dr. Nash.

## II.   UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

The United States moves for summary judgment on the basis of sovereign immunity, arguing that Brooks's administrative claims to HHS and the Air Force were untimely and cannot be saved by the Westfall Act's Savings Clause (Doc. 154).

Generally, the United States is entitled to sovereign immunity unless it has expressly consented to suit. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA includes an express waiver of immunity, permitting suit against the United States "for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Under the Public Health Service Act (PHSA), as amended by the Federally Supported Health Centers Assistance Act (FSHCAA), 42 U.S.C. § 233, the FTCA also applies to federally supported health centers, their employees, and certain contractors—

here, Dr. Nash and SIHF—who are deemed to be employees of the Public Health Service ("PHS") for the purpose of medical malpractice suits. 42 U.S.C. § 233(g)(1)(A). Once a person is deemed an employee of PHS, the FTCA provides the exclusive remedy for alleged malpractice. 42 U.S.C. § 233(a); *see also Hui v. Castaneda*, 559 U.S. 799, 809 (2010).

A mandatory condition of the sovereign immunity waiver within the FTCA, however, is that a plaintiff must first present her claim in writing to the appropriate federal agency within two years after her claim accrues. 28 U.S.C. §§ 2401(b) and 2675(a). A claim under the FTCA accrues when "(A) an individual actually knows enough to tip him off that a governmental act (or omission) may have caused his injury; or (B) a reasonable person in the individual's position would have known enough to prompt a deeper inquiry." *See Blanche v. United States*, 8l l F.3d 953, 958 (7th Cir. 2016).

Here, the United States argues that Brooks's claims accrued on the date of Bradford's death, January 16, 2016,[4] and, thus, her administrative claims presented to HHS on March 16, 2018, and to the Air Force on August 7, 2018, were untimely.

As further noted by the United States, however, Congress has carved out an exception to the FTCA's two-year statute of limitations for presenting an administrative claim to the appropriate agency. "[T]he Westfall Act—Congress's 1988 amendment to the FTCA—established a procedure by which an FTCA action that is filed in the wrong forum (such as the state court here) will be removed by the Attorney General to federal district court, at which point the United States is substituted as defendant, the case is dismissed

---

[4] The United States also suggests the Court could find the accrual date to be the date of Bradford's "code" event but ultimately concedes the claims accrued on the date of Bradford's death.

for failure to exhaust administrative remedies, and the plaintiff gets a second chance to file the FTCA claim with the appropriate federal agency." *Huertero v. United States*, 601 F. App'x 169, 171 (3d Cir. 2015) (citing 28 U.S.C. § 2679(d)). Under the Westfall Act's Savings Clause, a plaintiff's FTCA claim will not be time-barred as long as it: (1) would have been timely had it been filed on the date that the wrongly filed action was brought; and (2) is presented to the correct federal agency within 60 days of the federal district court's dismissal of the wrongly filed action. *Id.*

Here, because Brooks filed her state court action within two years of Bradford's death, albeit in the wrong court, the first part of the test is satisfied. It is the second part of the test, the United States argues, that fails. The United States argues the Westfall Act's Savings Clause is inapplicable in this case because it only applies to cases that are *dismissed* pursuant to 28 U.S.C. § 2675(a) for failure to administratively exhaust. But here, the Court did not dismiss the case. Instead, the Court stayed its ruling on the motion for summary judgment on the issue of exhaustion because Brooks was in the process of exhausting her administrative claims (Doc. 17). Then, once her claims were exhausted, the Court permitted Brooks to amend the complaint to add her FTCA claims (*see* Docs. 24, 33). Accordingly, under its plain language, the Savings Clause does not apply in this case and cannot excuse Brooks's untimely administrative claims. The United States further states that the Court "is bound by this result."

To understand why the Court did not "dismiss" Brooks's wrongly filed claims requires a brief discussion of the procedural status at that time. Brooks filed her state court action on January 10, 2018, naming Dr. Tichenor, Dr. Nash, and Southern Illinois

Healthcare Foundation, among others, as defendants. The United States subsequently removed the case to this court on March 12, 2018, under the FTCA. Apparently realizing for the first time that these defendants were federal employees, Brooks immediately filed an administrative claim with HHS on March 16, 2018. The United States then waited until May 25, 2018, to file its motion for summary judgment the issue of exhaustion (Doc. 17). On June 28, 2018, in response to that motion, Brooks informed the Court that she filed her administrative claim with HHS on March 16, 2018, and it would therefore be exhausted on September 16, 2018 (Doc. 19). At that point, the motion for summary judgment would be moot (*Id.*). Therefore, the Court, in the interest of judicial economy, declined to dismiss Brooks's claims against the United States and instead stayed its ruling on the motion to give Brooks time to complete the exhaustion process. Once she exhausted, the Court permitted Brooks to amend her to complaint to raise, for the first time, her FTCA claims.

To now find that Brooks's administrative claim was untimely because the Court did not dismiss her claims against the United States—after completing discovery and numerous depositions—would defeat the purpose of the Court's earlier actions. While the Court elected not to "dismiss" the claims, it also took no action on them while Brooks was completing the exhaustion process. Once the administrative claims were exhausted, the state law claims against the United States were dismissed and Brooks properly raised her claims under the FTCA. Because any procedural misstep here was the fault of the Court and not Brooks, the Court declines to penalize her by refusing to apply the Savings Clause of the Westfall Act.

Next, the United States argues the Savings Clause is categorically inapplicable to

FTCA claims involving deemed employees of the PHS—here, Dr. Nash and SIHF—because such claims arise under the PHSA. The United States claims the Supreme Court in *Hui* held that the PHSA only incorporates the remedy provisions of the FTCA. The Savings Clause at § 2679(d)(5), however, is not a remedy provision but rather a procedural provision regarding administrative exhaustion. Therefore, the PHSA does not incorporate the Savings Clause.

In support of this argument, the United States cites *Hui*, which held that the PHSA precludes *Bivens* actions against PHS employees *personally* for constitutional violations arising out of their official duties. *Hui v. Castaneda*, 559 U.S. at 809. But *Hui* did not discuss the Savings Clause of the Westfall Act. *See id.*

The only other case cited by the United States is *Knapp v. United States, Dep't of HHS*, No.3:18-1422,2020WL969624, at *6-8 (M.D. Pa. Feb. 28,2020), in which—the United States asserts—the district court granted summary judgment for the United States in a federally supported health center FTCA action after noting the government's argument that the PHSA does not incorporate the Savings Clause. But even the district court in *Knapp* recognized that the Supreme Court in *Hui* "did not decide the issue of whether the Westfall Act's Savings Clause applied to an action against PHS officers and employees." *Id.* And on appeal, the Third Circuit found the Westfall Act did not apply to save the plaintiffs' claims because the plaintiffs *never* presented their claim to any Federal agency; rather, they faxed and hand delivered the SF-95 form to a county health center. *Knapp v. United States , Dep't of Health & Human Servs.*, No. 20-1537, 2020 WL 6582141, at *3 (3d Cir. Nov. 10, 2020). Moreover, the original *state court action* had not been dismissed and was

still pending. *Id.* The Third Circuit did not hold that the Westfall Act's Savings Clause does not apply to deemed employees of the PHS. Thus, it is simply inapposite to compare *Knapp* to the facts of this case.

The more persuasive position is that presented by Brooks, *i.e.*, that courts have simply operated on the presumption that the Westfall Act applies in FSHCAA cases. For example, in *Arroyo v. United States,* HHS had deemed the subject health center and its employees to be employees of the PHS, pursuant to the FSHCAA. *Arroyo v. United States*, 656 F.3d 663, 666 (7th Cir. 2011). In discussing the statute of limitations, the Seventh Circuit noted that the FTCA's two-year limitation period is "loosened by the Act's savings provision." *Id.* at 668. Thus, the Seventh Circuit was acting under the presumption that the Savings Clause was operative in cases against deemed employees of the PHS.

The Court acts under the same presumption here. With no affirmative authority to the contrary, the Court finds that the Westfall Act's Savings Clause applies to Brooks's claims against Dr. Nash and SIHF. Because the Savings Clause preserves Brooks's claims against Dr. Tichenor, Dr. Nash, and SIHF, the Court need not address the argument regarding equitable tolling. The Motion for Summary Judgment filed by the United States is denied.

### CONCLUSION

For these reasons, the Motion for Summary Judgment filed by St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis, Lindsay O'Neil, RN, and HSHS Medical Group (Doc. 156) is **GRANTED in part and DENIED in part**. The claims of alleged negligence relating to Dr. Donald Crouch are **DISMISSED with prejudice**. All

other claims remain pending.

The Motion for Summary Judgment filed by the United States (Doc. 154) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:   January 19, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge+**